(No. 81-CC-0036—)

A & K MIDWEST INSULATION, INC., Claimant, *v.* THE STATE OF ILLINOIS, Respondent.

*Opinion on motion to dismiss filed December 24, 1980.*

*Opinion filed February 8, 1983.*

JAMES W. SANDERS & ASSOCIATES, for Claimant.

NEIL F. HARTIGAN, Attorney General (WILLIAM E. WEBBER, Assistant Attorney General, of counsel), for Respondent.

## OPINION ON MOTION TO DISMISS

HOLDERMAN J.

Claimant filed a petition before this Court claiming that it was the lowest bidder on the ventilation work for a new school in Metropolis, Illinois. The bids were awarded by the Capital Development Board of the State of Illinois. Claimant seeks to recover lost profits based on the alleged breach of statutory duty to accept the lowest responsible bid.

The Respondent, the State of Illinois, in its motion to dismiss, sets forth that Claimant was not the lowest bidder, but that a firm by the name of Eater Sheet Metal was the lowest bidder, and therefore the contract was awarded to it. Apparently from the records before us, the bid was broken down into a base bid and additional for alternate work. The State admits that the Claimant was the lowest bidder on the base bid. But considering the base bid along with the alternate bid, then the total of the two results in Eater Sheet Metal having the lowest total, and therefore was awarded the contract.

Attached to the motion to dismiss was a letter from the Capital Development Board setting forth these facts together with a copy of the bid tabulations of the Capital Development Board.

The documents attached to the motion to dismiss were submitted under Rule 14 of the Court, which states that all records and files maintained in the regular course of business by any department, board, agency, commission or authority of the State, and all departmental reports made by any office relating to any matter or case pending before the Court shall be *prima facie* evidence of the facts set forth therein. In response, Claimant does not deny the contention of the Capital Development Board's letter, but states under Rule 20 the State had the obligation of filing an affidavit setting forth the facts. Rule 20 requires an affidavit when facts do not appear of record.

The State claims that attaching the letter and the bid tabulation from the Capital Development Board made these documents a matter of record under Rule 14. With this we agree. In addition, it is to be noted that Claimant has not contradicted in any way the facts set forth in the State's motion.

The motion to dismiss is hereby allowed.

## OPINION

HOLDERMAN, J.

In September of 1979, Respondent took bids for ventilation work for a new school in Metropolis, Illinois. Claimant, a construction firm, submitted a bid on this project but Respondent accepted the bid of another contractor and, as a result, Claimant alleges it lost profits in the amount of $62,789.72, and suit is brought for said lost profits.

This case was originally dismissed on motion of Respondent on the basis of a departmental report of the Capital Development Board which stated that Claimant's bid was not the lowest bid on the proposed project.

Claimant filed a petition for rehearing under Rule 22 of this Court which alleged that Claimant had submitted the lowest bid and the departmental report, submitted under Rule 14, was in error. The order of this Court dismissing this cause was set aside and the matter was submitted to a commissioner for hearing.

Respondent's position at the hearing was summarized by the Assistant Attorney General as follows:

"Any mistakes in computing the bids were the responsibility of the Claimant due to the negligence of the Claimant in misusing the bid forms which were submitted and in using the wrong bid form which set forth an inherent discrepancy in the bids which resulted in disqualification of Claimant's bid."

Respondent takes the position that Claimant's bid was not in substantial conformity with the bidding documents, thereby violating Article 9.03(a)7 of the Revised Standard Documents for Construction, which were made a part of the contract by reference in this case, thereby resulting in the problem that was presented in this case.

At the hearing, James Alexander, one of the owners of the Claimant, testified that his company was qualified

to do work for the Capital Development Board and that he was experienced at having done many jobs for the State of Illinois. Claimant's exhibit No. 2 was not submitted to Claimant at the time the bid forms were sent out by Respondent. Claimant's exhibit No. 2 is the bid form which Respondent claims should have been filled out and which would have removed the discrepancies from the bid documents in this cause. As a result of Claimant's failure to use bid forms submitted as Claimant's exhibit No. 2, the dust collecting system had been included in Claimant's base bid and was submitted by Claimant's competitor as an alternate bid on the bid form identified as Claimant's exhibit No. 2.

Claimant's exhibit No. 4 was prepared by Claimant to show the breakdown of material costs, labor and profit which Claimant expected to make on the job in question.

It appeared at the hearing in this cause that subsequent to the original package of bid documents received by various bidders, including Claimant, an additional addenda of bid forms were sent out, including the bid form introduced as Claimant's exhibit No. 2. It appears that the successful bidder in the case at bar followed the instructions in submitting its bid in accordance with Claimant's exhibit No. 2 and the Claimant in the case at bar did not utilize Claimant's exhibit No. 2 but utilized the original package of bid forms that had been sent out by the State to prospective bidders .

Donald R. Gaddis testified for Claimant that he was the estimator for Claimant and prepared the bid forms. Gaddis testified that he did not receive Claimant's exhibit No. 2. He testified that he did not open the mail, but that Mr. Burton, the vice president of the Claimant company, opened the mail.

Mr. Burton testified that he was the vice president of the Claimant company. Burton testified that although he opens the mail, he does not read matters pertaining to sheet metal, and he would have placed these papers once received from the Capital Development Board on Mr. Gaddis' desk.

Mr. Viar testified for the Respondent that he was the manager of the contracts and pre-qualifications section of Respondent's Capital Development Board. Viar testified that addendum No. 6 to the project's specifications would have been furnished to all contractors of record in the architect's office who had taken out plans and specifications on the Metropolis school property. Viar testified that had the alternate bid form introduced in evidence as Claimant's exhibit No. 2 been omitted from the papers sent that the receiver would have been alerted to the discrepancy by references made to the alternate bid form in the documents.

Viar testified that the bid submitted by Claimant in the present case was not in substantial compliance with the State's standard documents for construction in that the ventilation bid was not bid in the way that the Capital Development Board asked them to bid the alternate. The witness also testified that the bid submitted by Claimant's competitor was in accordance with the bidding requirements.

The difference between the bid of the Claimant and the bid of Claimant's competitor was that Claimant's bid form failed to bid the dust collectors as an alternate. The witness continued and testified that the figures of the bid of Claimant and Claimant's competitor would not have made any difference if Claimant's bid form was not properly submitted.

Claimant argues that in the proceedings before the

commissioner, it was proven that Claimant did not receive the revised bid forms with addendum No. 6. We do not accept this conclusion. Mr. Viar of the Respondent agency testified that the revised bid forms were submitted to all contractors who had picked up the specifications. Furthermore, if the bid form submitted as Claimant's exhibit No. 2 was not submitted with addendum No. 6, the Claimant should have been alerted to its absence by virtue of reference to the revised bid form in addendum No. 6.

There can be no question that it is the responsibility of the Capital Development Board to accept the lowest responsible bid. However, it appears that the rules of the Capital Development Board require that contractors making bids do so in conformity with the requirements of the Capital Development Board (CDB) with respect to alternatives on a job-by-job basis.

Claimant, in its brief, states that the CDB had a statutory duty to award the ventilation contract to the lowest responsible bidder. This duty comes under the creation of the CDB by statute in the Capital Development Board Act. (Ill. Rev. Stat., ch. 127, par. 771 *et seq.*) This creation statute states that the CDB has the power to "enter into contracts on behalf of the State of Illinois to effectuate the purposes of this Act, subject to the Illinois Purchasing Act." Ill. Rev. Stat., ch. 127, par. 779.02.

The Illinois Purchasing Act (Ill. Rev. Stat., ch. 127, par. 132.1 *et seq.*) regulates the purchasing and entering into of contracts by the State. Section 6(a) of the Act states in part:

"That all purchases, contracts, and expenditure of funds shall be awarded to the lowest responsible bidder . . ." Ill. Rev. Stat., ch. 127, par. 132.6(a).

The reading of the two statutes in conjunction with one another clearly creates a statutory duty to accept the

bid from the lowest responsible bidder. It was undoubtedly the legislature's intent that all State contracts be executed as economically as possible. By awarding the contract for ventilation work on the Metropolis school to Eater Sheet Metal Company, the CDB was in accord with its statutory duty to award the contract to the lowest possible bidder, inasmuch as A & K's bid was not responsive to the invitation to bid.

The major thrust of Claimant's argument that the State of Illinois owes them restitution for lost profits stems from Claimant's contention that the CDB, by its employees and agents, breached their duty to supply Claimant with a revised bid form. Claimant charges that due to this failure on behalf of the CDB, they, A & K, used the original bid form and as a result of negligent reading and/or computation of the bids by the employees and agents of CDB, the contract was not awarded to the lowest bidder, A & K.

This argument cannot be maintained for the following reasons. The first page of the six pages mailed to the contractors contained information regarding the contents. No. 2 on the first page stated:

"Bid form substitute attached, sheets 00300-1 revised, 00300-2 revised, 00300-6 revised, and 00300-7 revised for those originally issued." (R.48)

The 00300-6 was the bid form for the ventilation work for this particular project. Mr. Alexander offered testimony that A & K received the eight addenda which were sent out by the CDB prior to the bid letting. Though Mr. Alexander insists that A & K did not receive the alternate bid form, a careful reading of the materials received would have notified them of the absence of the appropriate bid form to be submitted in lieu of the original bid form.

It is interesting to note in this connection that all

other prospective bidders received the proper forms and submitted their bids on the proper forms.

The main issue in this case is whether or not A & K's bid was responsive to the invitation to bid. In the case of *Leo Michuda & Son Co. v. Metropolitan Sanitary District of Greater Chicago* (1981), 97 Ill. App. 3d 340, it was stated that bids must conform to the advertised requirements of the invitation to bid. As stated before, four construction companies submitted bids in response to the sanitary district's advertisement for bids for a construction project within the district. Prior to the bid opening, the bidders were issued an addendum to the bid documents. Appendix D of the addendum required that the bidders submit with the bidding documents a goal disclosure form listing the minority subcontracts intended for award to minority and small businesses.

The court, in the *Michuda* case, stated that "bids must conform to the advertised requirements of the invitation to bid." The court further stated that:

"Every element which enters into the competitive scheme should be required equally for all and should not be left to the volition of the individual aspirant to follow or disregard and thus to estimate his bid on a basis different from that afforded the other contenders." 97 Ill. App. 3d 340, 344.

In another case similar to the one at bar, a contractor failed to file an appendix with his bid as required by the invitation to bid. (*Rosetti Contracting Co. v. Brennan* (7th Cir. 1974), 508 F.2d 1039.) In this case, the U.S. Court of Appeals for the Seventh Circuit found that the language in an invitation to bid regarding submission of an appendix by each bidder, clearly made submission of an appropriate appendix a matter of responsiveness. The court further went on to state that if a bidder were allowed to correct a deficiency in an appendix after the bid opening the effect would be to let a bidder avoid the matter by merely failing to supply the omission and that

the operation of the sealed competitive bidding system would thereby be impaired.

The CDB set forth mandatory requirements in its bidding system. As submitted, A & K's bid was nonresponsive and could not be amended after the bids were opened in order to make it responsive. Granting the award to A & K, by the CDB, would have been improper.

Inasmuch as an error was made on the part of A & K's employees, by misreading the materials, the State of Illinois cannot be held responsible for A & K's submission of the wrong form. The Claimant had notice of the change in bid forms and did not use it. To assert, several months after the awarding of the contract, that the Respondent State of Illinois' employees were negligent in reading the bid form is a feeble attempt to win the contract.

It is the opinion of this Court that the error that resulted in Claimant not securing the bid was one of its own making and the Respondent cannot be penalized because of that error. It is mandatory that bidding procedures be followed so that all bidders are placed on an equal footing.

Award denied. Case dismissed.